(Decided 12th November, 1886.)

GEORGE A. WINGERT, and FLORENCE WINGERT, Administrators of J. FRANK DILLEY, and others vs. JOSIAH H. GORDON.

*Separate estate of Married women—Parol Contract in relation thereto—Equity Practice.*

Certain married women were interested with others, in a fund, the mode of distributing which was under contest in a proceeding in equity. They and their husbands verbally employed G. to conduct and manage the case on their part, with the understanding and agreement that he should be compensated for his services by the payment of reasonable fees and commissions out of the money

Wingert, *et al. vs.* Gordon.

distributed to said parties, in said cause, as the same should become due and payable to them. A petition was filed in said cause by G., asking that a reasonable compensation for his professional services in behalf of said parties might be ascertained by the auditor, and paid to him out of their share of the funds under the control of the Court in that case. On a demurrer to said petition, it was HELD:

1st. That G. had a right to intervene in the case by petition, and and should not be driven to an original bill.

2nd. That the services of G. having been rendered with exclusive reference to the separate estate of said married women, and for its benefit, and the contract being explicit that payment therefor should be made out of their share of the fund, the objection that the contract was a parol one was removed, and the demurrer to the petition was properly overruled.

3rd. That opportunity should be afforded the demurrants to answer the petition, and take testimony on their side of the issues that might be presented.

4th. That the settlement of the estate, so far as the other parties to the original proceeding were concerned, need not be delayed by this proceeding. The accounts, so far as they make distribution to them, could be ratified, and they could receive their money.

APPEAL from the Circuit Court for Alleghany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued for the appellee before ALVEY, C. J., YELLOTT, MILLER, and BRYAN, J., and submitted for the appellants.

*J. Frank Seiss,* for the appellants.

*William Brace,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer to a petition filed by the appellee in the case of *Love vs.*

*Dilley, et al.*, asking that a reasonable compensation for his professional services in behalf of the appellants may be ascertained, and paid to him out of their share of the funds under the control of the Court in that case. These funds consist of the personal estate and the proceeds of the sale of the real estate of Joseph Dilley, deceased, who died intestate. The history and character of the litigation over that estate will be found fully stated in the reports of the cases of *Dilley, et al. vs. Love, et al.*, 61 *Md.*, 603, and *Love, et al. vs. Dilley, et al.*, 64 *Md.*, 238.

The deceased left a number of heirs who were entitled to his property by the laws of descent and distributions. To these he had in his life-time paid various sums of money, but to some more than to others, and the controversy was whether these payments should be treated as advancements, and if so, what was the amount advanced to each. Three granddaughters, being daughters of a son whose death occurred shortly after that of the intestate, were entitled to one-fifth of the estate. They are married women, and they and their husbands were parties to the suit, have demurred to the petition, and are the appellants. The amount they could receive depended upon their success in sustaining and enhancing in amount the advancements alleged to have been made to each of the other heirs, and in resisting or cutting down those alleged to have been made to their father, and the same thing was true as to the interest and amount to be received by each of the other parties. This was the controversy, and it bears a close analogy to a case where several creditors are contesting *inter sese* their rights and priorities to a fund in Court, and where each must have his own counsel. In this contest the appellants employed the appellee as their solicitor, and he conducted the litigation (which was warm and protracted) in their behalf, in the Court below, and argued it for them on appeal in this Court. They have refused or neglected to pay

him for his services, and he now intervenes in the case by petition, and asks the Court to have proof taken before the auditor as to the value of his services, and that the same be charged upon and paid out of his clients' share of the fund.

His claim is based upon the ground that he has acquired by *express contract,* a lien or charge upon the fund, which is enforceable in equity, and if this be true, we see no objection to the mode he has adopted of enforcing it. We think he has the right to come in by petition and should not be driven to an original bill. The charge is not upon all the separate estate of these married women, if they have any other, but upon their share of this fund.

The contract is stated in the petition and admitted by the demurrer. The averment is that these married women and their husbands employed the petitioner to conduct and manage the case on their part, and generally to conduct the cause for them and for their interest, " with the understanding and agreement between the petitioner and said parties so employing him, that he should be compensated for his services by the payment of reasonable fees and commissions out of the money distributed to said parties in said cause, as the same should become due and payable to them." It is not averred that this contract was in writing, and we assume it to have been a simple parol contract between these married women and their husbands on the one side, and the appellee on the other. It must also be conceded that these *fémes covert* held their share of this fund under Art. 45, sec. 2, of the Code, which declares that a married woman "shall hold" the property owned or acquired according to the provisions of the preceding section "for her separate use, with power of devising the same as if she were a *féme sole,* or she may convey the same by a joint deed with her husband." The question then comes to this, is it competent for hus-

band and wife to create an equitable lien or charge upon the separate estate of the latter secured to her by the Code, by a parol contract made by them jointly?

It was the settled law of this State before the adoption of the Code, that a married woman, in the contemplation of a Court of equity, occupied the position of a *féme sole*, in respect to her separate estate, and where the deed or instrument creating the separate use contained no limitation or restriction upon the power of disposition, she was at liberty to dispose of the property as a *féme sole*, without the assent or concurrence of either the husband or trustee. The Code requires that the right and power of disposition by the wife, other than by way of devise, shall be exercised with the concurrence of her husband. But in *Hall & Hume vs. Eccleston*, 37 *Md.*, 510, where this section of the Code was first construed by this Court, it was held that it was not the intention of the Legislature in imposing this restriction upon the power of disposition, to prevent the husband and wife from contracting so as to charge or encumber the estate, nor to divest "the Courts of their well defined and long established equity power and jurisdiction to enforce such contracts." The decision in that case clearly goes to the extent of holding that the husband and wife may charge or encumber the separate estate of the latter, held by her under the Code, by the same kind of contract, if made by them jointly, with which a married woman alone might, before the Code have charged or encumbered the estate which she held under an instrument containing no restriction upon her power of disposition, and that Courts of equity have the same power to enforce the contract in the one case as in the other.

In the English Courts there has been much discussion, and difference of opinion among eminent Judges, as well as conflicting decisions, upon the question as to how the wife's estate could be pledged or charged, but we must

follow our own decisions upon the subject. In most of the earlier Maryland cases there were written instruments signed by the wife which expressed upon their face the intent to charge her separate estate, and the question whether this could be shown by parol evidence was not considered or at least not decided. But in *Conn vs. Conn*, 1 *Md. Ch. Dec.*, 212, Chancellor JOHNSON expressed the opinion that the design of the wife to pledge her separate property for the payment of the debts there in controversy could be shown by parol proof. In *Koontz vs. Nabb*, 16 *Md.*, 549, the Court, after an examination of the authorities, came to the conclusion that a married woman having separate estate, cannot affect that estate unless the obligation sought to be enforced, presents upon its face some evidence of the intent to charge the estate, "or there be evidence *aliunde* tending to prove such intent," and this expression has been frequently quoted in subsequent cases. In *Jackson vs. West*, 22 *Md.*, 549, an open account for necessaries furnished by tradesmen to a married woman who was living separate from her husband, was presented, *after her death*, as a claim against her separate estate in the hands of her trustee. It was allowed by the Court upon proof that for years before similar articles had been furnished by the same parties, and from time to time their accounts had been presented to the trustee and had been paid out of the trust funds at her request, or with her approval, and that such had been the course of dealing between all the parties. "These facts," say the Court, "show the intent of Mrs. West, to charge her separate estate with this debt; it is manifest that such was the understanding of the appellants (the tradesmen); upon this the credit was given by them and to deprive them of the benefit of the security upon which they relied, and upon which, by the uniform course of dealing, they had a right to rely for payment, would be inequitable and defeat the plain intent of all the parties."

But in the recent case of *Girault and Wife vs. Adams and Wife*, 61 *Md.*, 1, the question was directly presented and expressly decided. In that case there was simply a *parol agreement* by husband and wife to execute a mortgage of the wife's real estate which she held under the Code, to secure an advance of money to be used in building a house on the property. The money was advanced and the house was built, and upon a bill filed to enforce the charge against her property, he set up the defence that no charge existed, because the agreement was not in writing. In answer to this the Court say : "We agree with the Circuit Court that it is perfectly competent for a husband and wife to make a binding agreement for the improvement of the wife's estate ; and if it is performed by the other party, the money actually advanced ought to be charged on the wife's estate. To justify a Court of *equity* in so charging the estate it is not indispensably necessary that the intention to charge the separate estate should be evidenced in writing. It may appear *aliunde.*" They then cite the cases of *Koontz vs. Nabb*, and *Jackson vs. West*, and add : "If it sufficiently appear that the dealing was had with direct reference to the estate belonging to the wife no matter whether the proof be in writing or in parol, her estate will be charged in equity." This decision is quite conclusive of the present case. The services of the appellee were rendered with exclusive reference to the separate estate of these married women, and for its benefit, and the *contract* is explicit that payment therefor should be made out of their share of this fund. The objection that this contract was a parol one being thus removed, it follows that the order appealed from must be affirmed. Of course when the case goes back an opportunity must be afforded the appellants to answer the petition and take testimony on their side of the issues that may be presented. The settlement of the estate, so far as the other parties are concerned, need not be delayed by this

proceeding. The accounts so far as they make distribu-
tions to them can be satisfied, and they can receive their
money.

We thus dispose of the case upon the distinct ground of
a charge created by an express contract, and not upon the
ground that a solicitor, as such, has any lien for his profes-
sional services upon the money he may recover for his
client in a contested suit in equity, nor upon the ground
that the Court would, in a case like this, be authorized by
any established practice to make an allowance to a solici-
tor for services rendered to his client.

> *Order affirmed, and*
> *cause remanded.*

(Decided 12th November, 1886.)